Thomson, J.
Suit upon two promissory notes executed to the plaintiffs, one for $1,000, dated August 10, 1896, due in thirty-five days, and the other for $163.65, dated December 10, 1896, payable on demand. There was a verified answer denying the execution and delivery of the notes. The signature affixed to each note was “ J. R. Witcher, L.” Witcher was a lumber dealer at Cripple Creek, Colorado, and operated a sawmill at a considerable distance out; and at the date of these notes, and for a considerable time before, his lumber business was carried on under the management of A. H. Lefler. It was shown by a witness qualified to testify on the subject, that these notes, and the other exhibits produced, were in the handwriting of Lefler. The evidence was uncontradicted. The consideration of the notes was lumber furnished by the plaintiffs to the defendant, and the controlling question in the case relates to the authority of Lefler to bind the defendant by the notes.
Before proceeding to the consideration of this question, it will be well to dispose of the following instruction given at the request of the plaintiffs, to which the defendant takes serious exception: “-The defendant alleges that the notes in question were executed by one Lefler without authority from him to make such notes.” Neither in his answer nor in his testimony did the defendant allege that the notes were ex *300 ecuted by Lefler, and the statement in the instruction that he did, was incorrect. But in order that an error committed in the progress of a litigation, in behalf of the successful party, may work a reversal of the judgment, its nature must be such that it may result in prejudice to the rights of the other. Now the fact of the execution of the notes by Lefler were not in question. The proof for the plaintiffs was that they were executed by Lefler, and that they were, was.not disputed by the defendant. It was the duty of the court to tell the jury that the evidence was conclusive that Lefler wrote and signed the notes, and so long as the jury were informed that there was no question relating to the handwriting of the notes for them to consider, we are unable to see how an incorrect statement of the manner in which the question was eliminated could work harm to the defendant. The real question was whether Lefler had authority to make the notes, or whether the words or acts of the defendant were such as to justify the plaintiffs in believing that he had such authority; and if the evidence warranted the court in submitting that question to the jury at all, we are unable to see that the other instructions given are subject to serious criticism.
Prom the evidence, it appears that for a considerable time before and after the making of the notes, there were continuous business transactions between the plaintiffs and the defendant, all of which were managed in behalf of the defendant by Mr. Lefler. A number of letters to the plaintiffs relating to these transactions were in evidence. They covered a period of time extending from December 9, 1895, to December 12, 1896, and the earliest of them refers to previously transacted business. They were all signed “ J. R. Witcher, L.,” except one, and that was signed “A. H. Lefler.” They contained orders for lumber, remittances on account, checks to be credited on the notes, and requests for time.
The plaintiff, McGinnity, had a conversation with the defendant at the office of the plaintiffs, in which, in response to some remark or suggestion of McGinnity about the purchase of goods, the defendant said he had nothing to do with the *301 buying of material; that he had made an arrangement with Lefler to run his business, and that he was going to attend to the sawmill. This conversation occurred shortly after the plaintiff, according to his statement, had made the arrangement with Lefler. In his testimony, the defendant said that Lefler had authority to sell lumber, bank the' money, draw checks and pay bills. From the testimony of witnesses who had occasion to know the manner in which the lumber dealings of Witcher were conducted after the business was turned over to Lefler, the latter was, to all appearances, in absolute control. He bought material, made all payments and collections, deposited the money received, and checked against it, and used Witcher’s credit in the business as he saw fit. When Witcher was present, as he occasionally was, he made no suggestions, and took no partin the transactions. The latter said in his testimony that he did not know what kind of a business Lefler was doing. In the course of the business, in settlement of indebtedness incurred in carrying it on, Lefler executed a number of notes in Witcher’s name, other than those in suit, the payment of some of which was afterwards secured by Witcher.
Witcher testified that Lefler had no authority from him to buy on credit, or make any papers, and that Lefler was im structed to do a cash business. When the instructions were given, he did not say, but if such was the original situation, the authority must have been changed, and the instructions revoked, for Lefler did not do a cash business, and, so far as can be gathered from the evidence, all the purchases were made on credit. Witcher was present a number of times when Lefler was buying on credit, and gave no sign of disapproval. Lefler made notes other than those in suit, Witcher knew he made the notes, and secured some of them, but if Witcher ever called Lefler to account for disobeying his instructions in giving the notes, the evidence makes no mention of the fact. Lefler continued in charge of the business as before, and conducted it as before, without protest from Witcher. It is to be presumed that a principal will not tol *302 erate continued and persistent disregard of his instructions by his agent, and if the agent, for a long period of time, pursues a certain method in the conduct of the business of his principal, without token of dissatisfaction from the latter, the presumption is that the method and the instructions correspond. From the testimony of Witcher and his statement to McGinnity, and from the evidence of the manner in which the business was uniformly conducted by Lefler, with the acquiescence on the part of Witcher which silence indicates, we think an inference that by the arrangement between Wichter and Lefler, the latter was invested with all the power of the former, is entirely legitimate.
Respecting the proposition that it is the duty of a person dealing with an agent to inquire into the extent of his authority, we have no controversy with counsel. Ordinarily, unless the conduct of the principal renders inquiry unnecessary, persons transacting business with an agent are bound by the limitations upon his authority. But when the power of the agent is absolute, inquiry would disclose no limitations; whatever the principal might do, the agent might do; and any lawful act of the agent in relation to the business, — any act which the principal himself might lawfully perform, — would have the same force, and be followed by the same consequence as if it had been done by the latter.
We think the finding, necessarily involved in the verdict, that Lefler had authority to make these notes, was warranted by the evidence.
The judgment will be affirmed.

Affirmed.